# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4637 | **DATE** | 7/1/2004 |
| **CASE TITLE** | Glen Young vs. Warden Jerome Graber et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Renewed Motion to Dismiss [#15-1] is hereby **granted**. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 7-2-04 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 7/1/2004 date mailed notice | |
| FT/ *sey* | courtroom deputy's initials | 2004 JUL -1 PM 2:42 | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLEN YOUNG (Reg. No. 20619-424)   )
                                   )
           Plaintiff,              )
                                   )   No. 03 C 4637
      v.                           )
                                   )   Magistrate Judge Arlander Keys
WARDEN JEROME F. GRABER, et al.,   )
                                   )
           Defendants.             )

MEMORANDUM OPINION AND ORDER

On September 16, 2002, while Glen Young, a federal prisoner, was being held at the Metropolitan Correctional Center (MCC) in Chicago, he injured his toe in a fight. Afterwards, he complained of terrible pain, suspected a fracture, and asked to have x-rays taken. He was told that the x-ray technician visited the MCC once every two weeks, and that he would have to wait until the next visit to have his toe checked out. As it happened, however, Mr. Young was transferred out of the MCC to another federal institution before the technician's next visit, so he never did have his toe x-rayed at the MCC. He did, however, have an x-ray taken at a federal prison in Oklahoma, where he was sent after leaving the MCC; there, he was told that the bones in his toe were misaligned, and that, as a result, his toe would be immobile.

Mr. Young then filed suit in this Court, alleging that the MCC's warden, Jerome F. Graber, had been deliberately indifferent to his injury, and seeking $50,000 in damages. Warden Graber moved to dismiss the complaint on three grounds: first, he argued

that Mr. Young's complaint should be dismissed because he had invoked 42 U.S.C. § 1983, which is inapplicable to suits against federal officials; second, he argued that Mr. Young's suit, which named Warden Graber in his official capacity, was barred by the doctrine of sovereign immunity; and, third, he argued that the suit should be dismissed because, as Mr. Young admitted in his complaint, he had not filed a grievance concerning his treatment, and had, therefore, failed to exhaust the administrative remedies available to him as required by 42 U.S.C. §1997e(a).

Judge Gottschall, to whom the case was initially assigned, rejected each of these arguments. She slammed the door with respect to Warden Graber's first and second arguments, noting that, although Warden Graber was technically right about the issues, dismissal of a *pro se* complaint on such technicalities was inappropriate; instead, the court construed Mr. Young's complaint to state a *Bivens* claim against Warden Graber in his individual capacity. With respect to the third argument, the court held that, if it were true, as Mr. Young claimed, that he could not have filed a grievance after he was transferred out of the MCC, then he should not be penalized for failing "to exhaust a procedure that was no longer 'available' . . . ." Memorandum Opinion and Order, p. 3. Judge Gottschall left the door open to the filing of a renewed motion to dismiss, however, in the event Warden Graber could "establish that Young had an available administrative remedy after his transfer that he nevertheless failed to exhaust." Memorandum Opinion and Order, p. 4.

2

On February 26, 2004, Warden Graber filed a renewed motion to dismiss. Mr. Young, who was probably unaware at the time that Warden Graber had filed a new motion to dismiss, filed an amended complaint on March 23, 2004, naming new defendants.[1] Shortly thereafter, the parties consented to proceed before a United States magistrate judge, and the case was reassigned to this Court on April 20, 2004.

In his renewed motion, Warden Graber argues that Mr. Young did, in fact, have an available administrative remedy after his transfer from the MCC. In support of this argument, Warden Graber has directed the Court's attention to federal regulations establishing the "Administrative Remedy Program." According to the regulations, the Administrative Remedy Program "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §542.10(a). The Program "applies to all inmates in institutions operated by the Bureau of Prisons, [as well as] former inmates for issues that arose during their confinement"; it does not apply to inmates confined in other non-federal institutions. *Id.*, §542.10(b). The regulations require an inmate seeking redress first to attempt to resolve informally any issues of concern, and then, if that attempt fails, to file a "Request for Administrative Remedy." 28

---

[1] Because a successful exhaustion defense would doom a claim against all defendants, not just Warden Graber, the Court declined to order service of the amended complaint on the newly-named defendants until the renewed motion to dismiss was decided.

3

C.F.R. §542.13, §542.14. The regulations further provide that a Request for Administrative Remedy must be filed within 20 calendar days following the events giving rise to the Request. *Id.* §542.14. Once a request is filed, the regulations require the warden and various other BOP officials to review, investigate and respond to it; for requests that are initially rejected or denied, the regulations outline processes for resubmission and appeals. *Id.* §§542.11, 542.15, 542.17. If an inmate presents a concern in his request that is not properly redressed under the Administrative Remedy Program, the regulations provide that BOP officials will, after reviewing the request, advise the inmate about other avenues of relief, including the Federal Tort Claims Act. Id. §542.10(c).

Of particular relevance in Mr. Young's case, a Bureau of Prisons Program Statement makes clear that an inmate who has been transferred to another federal institution may file a Request for Administrative Remedy seeking redress for something that happened at his previous institution. *See* United States Department of Justice, Federal Bureau of Prisons, Program Statement No. 1330.13, p. 12 (Effective Aug. 6, 2002)(attached as Exhibit B to Warden Graber's Renewed Motion to Dismiss). The regulations provide that, if an inmate is delayed in filing a Request for Administrative Remedy because of a transfer, the 20-day deadline described above may be extended. 28 C.F.R. §542.14.

Warden Graber argues that, if Mr. Young had pursued his concerns within the confines of the Administrative Remedy

4

Program, the BOP might have changed its policies regarding x-rays at the MCC and elsewhere in the federal penal system. *See* Renewed Motion to Dismiss, p. 6. Or, Warden Graber argues, if Mr. Young had filed a Request for Administrative Remedy, the BOP could have advised him about the remedies and procedures under the Federal Tort Claims Act, which, in Warden Graber's view, is the appropriate means for addressing what amounts to a medical malpractice claim. Because the Administrative Remedy Program provided Mr. Young with a means of addressing his concerns, and because he - admittedly - failed to take advantage of those means, Warden Graber argues, dismissal of the complaint is required under the Prison Litigation Reform Act. As explained below, the Court agrees.

Exhaustion of administrative remedies is a precondition to suit in federal court. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). The Prison Litigation Reform Act (PLRA) provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Based upon the regulations and Program Statement described above, it is clear that Mr. Young could have filed a Request for Administrative Remedy even after he was transferred out of the MCC. In the parlance of the PLRA, *something* administrative was "available" to Mr. Young; the question is whether what was available was actually a "remedy."

5

The limited question raised here, therefore, is whether whatever potential action the BOP could have taken in response to a Request for Administrative Remedy filed by Mr. Young, or in response to Mr. Young's concerns generally, would constitute a "remedy" within the meaning of the PLRA, given that any such action could not have provided Mr. Young with the redress he seeks (money damages) and could not really have positively impacted Mr. Young, who had already left the MCC.

Prior to the United State Supreme Court's decision in *Booth v. Churner*, 532 U.S. 731 (2001), the federal courts of appeals were split on the question of whether exhaustion is required when the administrative processes available to an inmate cannot provide the inmate with the particular relief he seeks (typically money damages). *See Booth*, 532 U.S. at 735 (citing cases on both sides of the issue). *Booth* resolved that conflict by flatly rejecting the notion that §1997e(a) excuses exhaustion where exhaustion would be futile; based on the language of the statute, the Court held, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Id*. at 740-41 & n.6. Thus the fact that damages were unavailable under the Administrative Remedy Program would not excuse Mr. Young's failure to file a Request for Administrative Remedy, even though his request could never yield the relief he sought – namely, an award of damages.

In a footnote, the Court in *Booth* suggested that an administrative process is not, strictly speaking, a "remedy"

unless it can result in "some responsive action with respect to the type of allegations [the inmate] raises." *Id.* at 736 n.4. The Court said nothing about whether that "responsive action" actually has to benefit or touch the plaintiff personally, or whether it is enough that some action generally may be taken. But two post-*Booth* Seventh Circuit decisions shed light on the question of whether, under the circumstances presented here, the BOP's Administrative Remedy Program counts as an available administrative remedy for purposes of §1997e(a).

In *Larkin v. Galloway*, 266 F.3d 718 (7th Cir. 2001), the plaintiff, an inmate at a federal correctional facility in Illinois, filed suit under 42 U.S.C. §1983, alleging that he was severely beaten by prison personnel. Shortly before trial, the defendants moved to amend their complaint to add an affirmative defense based on 42 U.S.C. §1997e(a), Larkin admitted that he had failed to take advantage of the facility's administrative grievance process, and the district court then dismissed the case. *Id.* at 720-21. Larkin appealed, arguing that the PLRA's exhaustion requirement does not cover excessive force claims, and that, even if it does, his claim fell within a narrow exception to that requirement. *Id.* at 721. Specifically, Larkin argued, he was not required to exhaust administrative remedies because "once the beatings were over and his injuries had healed, 'the harm was done and no further administrative action' could alter the amount of money damages to which he was entitled." *Id.* at 723.

7

The Seventh Circuit held that §1997e(a) does, indeed, apply to excessive force claims. *Id.* at 722-23. And, more importantly for purposes of this case, the court held that Larkin's complaint was properly dismissed under §1997e(a) because "it cannot be said . . . that the 'relevant administrative procedure lacked authority to provide any relief or to take any action whatsoever in response to [his] complaint.'" *Id.* at 723 (quoting *Booth*, 531 U.S. 956, 121 S.Ct. 1819, 1822 (2001)). On the contrary, the court noted, "some action could have been taken in response to the complaint, even after Larkin's wounds had healed; the officers might have been disciplined, he might have been moved to a unit or facility not under the defendants' supervision, and, at a minimum, he would have received a hearing on his grievances." *Id.*

In *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002), the plaintiff, a former Illinois prisoner who had been released, sued various officials at the institution where he had been housed, alleging that they had failed to prevent him from being beaten and harassed by rival gang members, and that, when he complained about that failure, they beat him in retaliation. Dixon filed several grievances, and was subsequently granted a transfer to another institution, though, for whatever reason, he was never transferred. *Id.* at 487. The defendants moved to dismiss Dixon's complaint, arguing that Dixon had failed to exhaust his administrative remedies, and the district court agreed. Dixon appealed, arguing first that exhaustion was not required because

8

he was seeking only money damages – a remedy not available under the prison's administrative system; the Seventh Circuit quickly rejected that argument in light of *Booth*, which, unfortunately for Mr. Dixon, had been decided the day before he filed his appeal. *Id.* at 488.

Dixon also argued, on appeal, that he had, in fact, exhausted his administrative remedies on the issue that ultimately led to the decision to transfer him; the state argued otherwise, noting that, although Dixon had filed one grievance on this issue, when the state failed to transfer him, he could have – and should have – filed another grievance or done something administratively to compel the prison to follow through with its transfer obligation. *Id.* at 490. The Seventh Circuit held that §1997e's exhaustion requirement compels a prisoner to "complete the administrative process 'by following the rules the state has established for that process.'" *Id.* at 491 (citing *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002)). Thus, the court held, because the prison's grievance process allowed Dixon to press the transfer issue with a direct appeal to the Director of the Illinois Department of Corrections, "there is a 'possibility of some relief for the action complained of' by Dixon," and he was required to pursue that direct appeal. *Id.* at 491 (quoting *Booth*, 532 U.S. at 731). Significantly, the court noted that "requiring Dixon to appeal directly to the Director would furnish the Director with an opportunity to learn of possible infirmities in the prison grievance system and to correct any such

infirmities – one of the purposes of §1997e." *Id.* (citing *Porter v. Nussle*, 534 U.S. 516 (2002)).

Read together, *Booth*, *Larkin* and *Dixon* would seem to foreclose this suit; under these cases, a prison grievance procedure is an "available administrative remedy" that must be exhausted if it offers the possibility of *some* form of relief, regardless of whether it is the kind of relief the prisoner would prefer, and regardless of whether the specific action taken in response to the administrative process directly benefits the plaintiff personally. Under this standard, because the defendant has shown that *some* responsive action could have been taken in response to a request for administrative action filed by Mr. Young, the Court must find that Mr. Young had an available administrative remedy in the Administrative Remedy Program, and that, as he admits, he failed to exhaust that remedy. The fact that Mr. Young's complaint seeks relief that is not available through the Administrative Review Program is, under *Booth* and *Larkin*, of no moment. Nor is the fact that Mr. Young is unlikely to benefit personally from the possible responsive action identified by Warden Graber. It is true that, to the extent changes in policy can be made to improve the x-ray procedures or general medical procedures at the MCC, Mr. Young, who is no longer confined there, will receive no benefit from those changes – unless of course they are made on a system-wide basis, which Warden Graber suggests might be a possibility. But the question of whether the responsive action will personally benefit the

plaintiff-prisoner plays no role in the courts' exhaustion analysis. Indeed, as the Supreme Court noted in *Porter v. Nussle*, 534 U.S. 523, 524 (2002), if an available administrative process could give rise to responsive action that "might improve prison administration," it counts for purposes of §1997e(a), and exhaustion of that remedy is required. *Id.* at 988.

In *Dixon*, the Seventh Circuit suggested, in dicta, that, if even a direct appeal to the Director would prove futile, Dixon would have shown that administrative remedies were not really available – that there was "no 'possibility of relief,'" in other words – then dismissal under §1997e might not be appropriate. *Dixon*, 291 F.3d at 491. Seizing upon this suggestion, one could certainly argue, holdings to the contrary notwithstanding,[2/] that a "futility exception" to the exhaustion requirement does exist in the sense that if no responsive action is possible through available administrative remedies, exhaustion might be excused. But, as the regulations and Program Statement offered by Warden Graber make clear, that is not the case here.

Similarly, an argument may be made that the PLRA's exhaustion requirement *should* be read to apply only where the grieving prisoner could somehow, even if only tangentially, receive some benefit from the possible responsive action. But that is an argument for the Court of Appeals. For present

---

[2/] *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) ("there is no 'futility exception' to the PLRA exhaustion requirement"); *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999) (same).

11

purposes, this Court is bound not by what the law should be, but by what the Seventh Circuit and the Supreme Court have said the law is. As currently interpreted, that law precludes Mr. Young's suit.[3]

## Conclusion

For the reasons set forth above, the Court finds that Glen Young failed to exhaust the administrative remedies available to him under the BOP's Administrative Remedy Program. Accordingly, the Court finds that any claim he might have had arising out of the injury to his toe and the failure promptly to x-ray his toe is barred under 42 U.S.C. §1997e(a). The Court, therefore, grants Warden Graber's renewed motion to dismiss [Docket #15].

DATED: July 1, 2004

*Arlander Keys*
Arlander Keys
United States Magistrate Judge

---

[3] In addition to seeking dismissal based on §1997e(a), Warden Graber once again seeks dismissal based on sovereign immunity. Given the analysis on the exhaustion question, the Court need not reconsider the earlier sovereign immunity ruling.